1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA


MARYLOU GARCIA,                    )  1:06-cv-00709-LJO-SMS
                                  )
                 Plaintiff,       )  FINDINGS AND RECOMMENDATION RE:
     v.                           )  PLAINTIFF'S SOCIAL SECURITY
                                  )  COMPLAINT (DOC. 1)
MICHAEL J. ASTRUE,                )
Commissioner of Social            )
Security,                         )
                                  )
                 Defendant.       )
                                  )
_____ )


     Plaintiff is represented by counsel and is proceeding in

forma pauperis with an action seeking judicial review of a final

decision of the Commissioner of Social Security (Commissioner)[1]

denying Plaintiff's application for disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under

Titles II and XVI of the Social Security Act (Act). The matter

has been referred to the Magistrate Judge pursuant to 28 U.S.C.§

636(b) and Local Rule 72-302(c)(15). The matter is currently

before the Court on the parties' briefs, which have been

submitted without oral argument to the Honorable Sandra M.

_____

     [1]Michael J. Astrue is substituted for his predecessor as
Commissioner of the Social Security Administration. 42 U.S.C. §
405(g); Fed. R. Civ. P. 25(d)(1).

1

1  Snyder, United States Magistrate Judge, for preparation of
2  findings and recommendations.

3      I. <u>Procedural History</u>

4      Plaintiff filed concurrent applications for DIB and
5  SSI benefits, alleging disability as of July 15, 2003, based
6  primarily on diabetes, liver disease, back and left foot pain,
7  gallbladder problems, and depression; the protective filing date
8  was September 11, 2003. (A.R. 16, 70, 71-73, 226-29.) The
9  applications were denied initially and upon reconsideration.
10 (A.R. 48-51, 53-58, 232, 233-36.) Pursuant to Plaintiff's
11 request, a hearing before administrative law judge ("ALJ") Sean
12 Teehan was held on June 16, 2005, at which Plaintiff, her
13 attorney, and a vocational expert were present. (A.R. 59,
14 241-292). ALJ Teehan issued an unfavorable decision on January
15 13, 2006. (A.R. 16-21.) Plaintiff's request for review by the
16 Appeals Council was denied, and the ALJ's decision became the
17 final decision of the Commissioner on January 13, 2006. (A.R. 11,
18 237-38, 13-15.)

19     Plaintiff commenced this civil action for judicial review on
20 June 7, 2006. 42 U.S.C.A. §§ 405(g) and 1383(c). Briefing
21 commenced on March 9, 2007, upon the filing of Plaintiff's
22 opening brief, and it was completed on March 12, 2007, with the
23 filing of Defendant's memorandum in opposition.

24     II. <u>Standard and Scope of Review</u>

25     Congress has provided a limited scope of judicial review of
26 the Commissioner's decision to deny benefits under the Act. In
27 reviewing findings of fact with respect to such determinations,
28 the Court must determine whether the decision of the Commissioner

2

1   is supported by substantial evidence. 42 U.S.C. § 405(g).

2   Substantial evidence means "more than a mere scintilla,"

3   Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a

4   preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10

5   (9th Cir. 1975). It is "such relevant evidence as a reasonable

6   mind might accept as adequate to support a conclusion."

7   Richardson, 402 U.S. at 401. The Court must consider the record

8   as a whole, weighing both the evidence that supports and the

9   evidence that detracts from the Commissioner's conclusion; it may

10  not simply isolate a portion of evidence that supports the

11  decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

12  2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  It

13  is immaterial that the evidence would support a finding contrary

14  to that reached by the Commissioner; the determination of the

15  Commissioner as to a factual matter will stand if supported by

16  substantial evidence because it is the Commissioner's job, and

17  not the Court's, to resolve conflicts in the evidence. Sorenson

18  v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

19        In weighing the evidence and making findings, the

20  Commissioner must apply the proper legal standards. Burkhart v.

21  Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

22  review the whole record and uphold the Commissioner's

23  determination that the claimant is not disabled if the

24  Commissioner applied the proper legal standards, and if the

25  Commissioner's findings are supported by substantial evidence.

26  See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

27  509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

28  the Court concludes that the ALJ did not use the proper legal

1  standard, the matter will be remanded to permit application of

2  the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th

3  Cir. 1987).

4      III. <u>Disability</u>

5      In order to qualify for benefits, a claimant must establish

6  that she is unable to engage in substantial gainful activity due

7  to a medically determinable physical or mental impairment which

8  has lasted or can be expected to last for a continuous period of

9  not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).

10  A claimant must demonstrate a physical or mental impairment of

11  such severity that the claimant is not only unable to do the

12  claimant's previous work, but cannot, considering age, education,

13  and work experience, engage in any other kind of substantial

14  gainful work which exists in the national economy. 42 U.S.C.

15  1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th

16  Cir. 1989). The burden of establishing a disability is initially

17  on the claimant, who must prove that the claimant is unable to

18  return to his or her former type of work; the burden then shifts

19  to the Commissioner to identify other jobs that the claimant is

20  capable of performing considering the claimant's residual

21  functional capacity, as well as her age, education and last

22  fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d

23  1273, 1275 (9th Cir. 1990).

24      The regulations[2] provide that the ALJ must make specific

25  sequential determinations in the process of evaluating a

26  disability: 1) whether the applicant engaged in substantial

27

28      [2]All references are to the 2006 version of the Code of Federal Regulations unless otherwise stated.

4

gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (2006); 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

With respect to SSI, the five-step evaluation process is essentially the same. See 20 C.F.R. § 416.920.

Here, the ALJ found that Plaintiff's severe impairments of degenerative changes of the lower cervical spine and thoracic spine, osteoarthritis of the right hip, and diabetes mellitus did not meet or medically equal a listed impairment; her depression, liver pain, and gallbladder problems were only slight impairments; Plaintiff's subjective complaints and alleged functional limitations were not as severe as asserted and were only partially credible; Plaintiff had the residual functional capacity (RFC) to lift and/or carry fifty pounds occasionally and twenty pounds frequently, stand and walk six hours in an eight-

1 hour workday with normal breaks, sit four to six hours in an
2 eight-hour day with normal breaks, and be allowed to stand for a
3 minute or so every twenty minutes and periodically sit and stand;
4 Plaintiff could perform her past relevant work as child care
5 coordinator/housekeeper, weight master, and cashier; Plaintiff
6 was not disabled at any time through the date of decision. (A.R.
7 20.)

8       IV. Plaintiff's Subjective Complaints

9       Plaintiff argues that the ALJ failed to undertake and
10 document the appropriate analysis of Plaintiff's credibility; the
11 ALJ failed to state clear and convincing reasons to reject
12 Plaintiff's credibility and failed to make sufficiently specific
13 credibility findings.

14       The court in Orn v. Astrue, 495 F.3d 625, 635 (9th Cir.
15 2007), summarized the pertinent standards for evaluating the
16 sufficiency of an ALJ's reasoning in rejecting a claimant's
17 subjective complaints:

18       An ALJ is not "required to believe every
         allegation of disabling pain" or other non-exertional
19       impairment. See Fair v. Bowen, 885 F.2d 597, 603 (9th
         Cir.1989). However, to discredit a claimant's testimony
20       when a medical impairment has been established, the ALJ
         must provide " 'specific, cogent reasons for the
21       disbelief.' " Morgan, 169 F.3d at 599 (quoting Lester,
         81 F.3d at 834). The ALJ must "cit[e] the reasons why
22       the [claimant's] testimony is unpersuasive." Id. Where,
         as here, the ALJ did not find "affirmative evidence"
23       that the claimant was a malingerer, those "reasons for
         rejecting the claimant's testimony must be clear and
24       convincing." Id.
              Social Security Administration rulings specify the
25       proper bases for rejection of a claimant's testimony.
         See S.S.R. 02-1p (Cum. Ed.2002), available at Policy
26       Interpretation Ruling Titles II and XVI: Evaluation of
         Obesity, 67 Fed.Reg. 57,859-02 (Sept. 12, 2002); S.S.R.
27       96-7p (Cum. Ed.1996), available at 61 Fed.Reg.
         34,483-01 (July 2, 1996). An ALJ's decision to reject a
28       claimant's testimony cannot be supported by reasons

that do not comport with the agency's rules. See 67
Fed.Reg. at 57860 ("Although Social Security Rulings do
not have the same force and effect as the statute or
regulations, they are binding on all components of the
Social Security Administration, ... and are to be
relied upon as precedents in adjudicating cases."); see
Daniels v. Apfel, 154 F.3d 1129, 1131 (10th Cir.1998)
(concluding that ALJ's decision at step three of the
disability determination was contrary to agency
regulations and rulings and therefore warranted
remand). Factors that an ALJ may consider in weighing a
claimant's credibility include reputation for
truthfulness, inconsistencies in testimony or between
testimony and conduct, daily activities, and
"unexplained, or inadequately explained, failure to
seek treatment or follow a prescribed course of
treatment." Fair, 885 F.2d at 603; see also Thomas, 278
F.3d at 958-59.

Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007).

The factors to be considered in weighing credibility are set
forth in the regulations and pertinent Social Security rulings.
They include the claimant's daily activities; the location,
duration, frequency, and intensity of the claimant's pain or
other symptoms; factors that precipitate and aggravate the
symptoms; the type, dosage, effectiveness, and side effects of
any medication the claimant takes or has taken to alleviate the
symptoms; treatment, other than medication, the person receives
or has received for relief of the symptoms; any measures other
than treatment the claimant uses or has used to relieve the
symptoms; and any other factors concerning the claimant's
functional limitations and restrictions due to pain or other
symptoms. 20 C.F.R. §§ 404.1529, 416.929; S.S.R. 96-7p.

With respect to the course of analysis directed by the
regulations, the ALJ is first obligated to consider all symptoms
and the extent to which the symptoms can reasonably be accepted
as consistent with the objective medical evidence and other

evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Once it is determined that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then evaluate the intensity and persistence of the symptoms to determine how the symptoms limit the capacity for work. §§ 404.1529(b), (c); 416.929(b), (c). The ALJ will consider all available evidence. To the extent that the claimant's symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, the symptoms will be determined to diminish the claimant's capacity for basic work activities. §§ 404.1529(c)(4); 416.929(c)(4). A claimant's statements will not be rejected solely because unsubstantiated by the available objective medical evidence. §§ 404.1529(c)(2); 416.929(c)(2).

Further, the pertinent Social Security Ruling provides in pertinent part that an ALJ has an obligation to articulate the reasons supporting the analysis:

> ... When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the

1   individual's statements and the reasons for that
2   weight. This documentation is necessary in order to
    give the individual a full and fair review of his or
    her claim, and in order to ensure a well-reasoned
3   determination or decision.

4   S.S.R. 96-7p at 4.

5       Here, the ALJ specifically identified Plaintiff's subjective

6   claims, including those reflected in the medical record

7   (abdominal pain (A.R. 17), depression (id.), diabetic symptoms

8   (id. at 17, 18), pain in the back and right hip (id. at 18), and

9   foot pain (id.)) as well as those to which Plaintiff testified

10  (diabetic neuropathy and gallbladder problems that Plaintiff

11  claimed caused her to stop working, diabetes, feet, shoulder,

12  hip, and low back pain, numbness in her hands, inability to reach

13  up with her right hand, limitations on lifting, and tiredness for

14  half a day due to her medications for diabetes and high blood

15  pressure (A.R. 18-19)). The ALJ concluded that Plaintiff's

16  impairments could reasonably be expected to produce some of the

17  symptoms alleged, but the degree of limitation alleged was not

18  supported by the objective medical evidence and was not entirely

19  credible when evaluated under S.S.R. 96-7p. (A.R. 17.) The ALJ

20  stated that he had weighed all the factors and found that

21  Plaintiff's impairments were not as limiting as she alleged.

22  (A.R. 19.)

23      The ALJ stated reasons for his findings. He concluded that

24  the subjective complaints were exaggerated compared to the

25  objective medical evidence. (A.R. 19.) The ALJ expressly noted

26  the aspects of the medical record that reflected lesser

27  limitations, including normal gastrointestinal studies and lack

28  of acute disease in the abdomen after Plaintiff's gallbladder was

1 removed in December 2003 (A.R. 17); only mild degenerative
2 changes in the right hip and back (A.R. 18); and an absence of
3 medical intervention for her depression other than her regular
4 doctor's having prescribed an anti-depressant (A.R. 17).

5    Although Plaintiff generally asserts that the ALJ's reasons
6 were not supported by substantial evidence, Plaintiff does not
7 specify the precise evidence that Plaintiff contends render the
8 ALJ's reasoning unsupported. To the extent that Plaintiff is
9 attempting to state an argument, the argument is undeveloped and
10 unsupported by citations to the record; it thus fails to comply
11 with paragraph eleven of the scheduling order that issued in this
12 case on June 8, 2006.

13    Given Plaintiff's failure properly to develop her argument
14 and support it with citations to the record, it is sufficient to
15 note that the record supports the ALJ's conclusion that the
16 objective medical evidence did not square with Plaintiff's
17 claimed limitations. Although Plaintiff complained of severe back
18 pain and obtained pain medication (see, for example, A.R. 132,
19 144, 155, 162, 167-68, 171-72, 197, 200, 205, 215), the
20 radiological study in 2004 of Plaintiff's thoracic spine revealed
21 only minor degenerative changes (A.R. 188), and a study of the
22 lower cervical spine revealed only degenerative changes (A.R.
23 187). Although Plaintiff complained of pain in the right flank
24 and in the hip (A.R. 132-33), an IVP in January 2004 revealed
25 only mild irregularity of the renal margins, a small filling
26 defect in the major calix of the upper pole of the left kidney,
27 and mild elevation of the floor and neck of the urinary bladder
28 (A.R. 134); and a radiological study of the right hip in March

10

2004 revealed only mild osteoarthritis of the right hip and an indwelling right femoral rod from an old right femoral fracture (A.R. 189). Plaintiff complained of abdominal pain and right upper quadrant pain, but a radiological test in September 2003 revealed unremarkable kidneys, no liver lesions, and only an echogenic liver consistent with fatty change versus cirrhosis (A.R. 192); a CT of the abdomen was negative in September 2003 (A.R. 191); and a study of the liver was negative in September 2003 (A.R. 190). In May 2004 a radiological study revealed no acute disease in the abdomen (A.R. 186); in October 2004, a radiological study revealed no acute disease of the chest (A.R. 210).

It is established that although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be considered with others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir. 1999).

Here, the ALJ also relied on the routine or conservative nature of the treatment given to Plaintiff for her impairments, including treatment for depression by Plaintiff's regular doctor consisting of a prescription for an anti-depressant medication followed by no counseling or treatment from a psychiatrist or psychologist for her alleged depression (A.R. 17); routine treatment for diabetes (A.R. 17); cortisone shots in both feet from Dr. Nguyen (A.R. 17-18); and pain and anti-inflammatory medication as the only treatment modalities for Plaintiff's back

11

and right hip pain (A.R. 18). An ALJ may rely on the conservative nature of treatment or a lack of treatment in rejecting a claimant's subjective complaint of pain. <u>Johnson v. Shalala</u> 60 F.3d 1428, 1433-34 (9th Cir. 1995). Here, the record reveals essentially conservative treatment, and Plaintiff does not argue that there is a lack of record support for this factor or otherwise specifically challenge its adequacy.

The ALJ reasoned that Plaintiff testified that she read, walked, cooked, went shopping weekly, sorted laundry, watched television, cleaned house, did dishes, vacuumed at times, and visited her parents or her sister, who lived a half-hour drive away in Huron, once a week for three hours. (A.R. 19.) The ALJ reasoned that Plaintiff's daily activities were suggestive of a person with abilities to work and were inconsistent with complaints of disability. (A.R. 19.)

A claimant's ability to engage in activities of daily living to the extent that he or she spends a substantial part of his day engaged in pursuits involving the performance of physical functions or skills that are transferable to the work setting is relevant; a specific finding as to this fact may be sufficient to discredit a claimant's allegations. <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999). The mere fact of a claimant's carrying on certain daily activities does not necessarily detract from credibility as to overall disability. However, a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferable work skills. <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th

Cir. 2007) (holding that reading, watching television, and coloring in coloring books were such undemanding activities that they could not be said to bear a meaningful relationship to the activities of the workplace).

Here, the activities were of a nature and extent that they contradicted Plaintiff's claim of disability and also constituted functions that would reflect abilities to perform work; the ALJ mentioned not only reading and watching television, which required little more than the maintenance of attention, but also walking, driving substantial distances and carrying on extended visits, engaging in substantial house cleaning chores (washing clothes, cleaning house, doing dishes, vacuuming), cooking, and shopping. It was not necessary in these circumstances for the ALJ to make a specific finding concerning any particular skill level; rather, the ALJ pointed to specific evidence and expressly concluded that the conduct was inconsistent with a claim of disability. The ALJ's reasoning was clear and convincing and was supported by substantial evidence in the record.

It was appropriate for the ALJ to consider the lack of objective indicia of Plaintiff's impairments, including lack of objective clinical findings, inconsistent activities of daily living, use of conservative treatment, extent of efforts to obtain relief, and effectiveness of medications in controlling the symptoms. Soc. Sec. Ruling 96-7p and 20 C.F.R. § 416.929(c)(4)(1)(vii); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d at 346 (9th Cir. 1991); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

The ALJ stated that even Plaintiff's own treating physician,

Dr. Thompson, did not assess Plaintiff as being totally disabled, but rather opined that Plaintiff was capable of sedentary work. (A.R. 19.) A doctor's opinion that a claimant can work is appropriately considered. Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995). Included in the factors that an ALJ may consider in weighing a claimant's credibility are inconsistencies either in the claimant's testimony or between the claimant's testimony and the claimant's conduct, daily activities, or work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may consider whether the Plaintiff's testimony is believable or not. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999). The fact that Plaintiff's activities were not all necessarily inconsistent with a sedentary life does not undermine the significance of the inconsistency between Plaintiff's claimed functional limitations and her doctor's opinion regarding her limitations.

In summary, the Court concludes that the ALJ's findings concerning Plaintiff's credibility with respect to her subjective complaints were adequately articulated and were supported by clear and convincing reasons based on substantial evidence in the record.

V. Consideration of Plaintiff's Impairments

Plaintiff argues that at step two, the ALJ erred in concluding that Plaintiff's depression was not severe, and further, the ALJ should have obtained had a consultative psychiatric evaluation because of Plaintiff's history of

14

1  depression in order to determine how it affected Plaintiff's
2  ability to work. Plaintiff also argues that the ALJ failed to
3  consider all of Plaintiff's impairments in determining
4  Plaintiff's residual functional capacity (RFC) because the ALJ
5  failed to assess Plaintiff's hypertension and obesity.

6      At step two, the Secretary considers if claimant has "an
7  impairment or combination of impairments which significantly
8  limits his physical or mental ability to do basic work
9  activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). This is
10 referred to as the "severity" requirement and does not involve
11 consideration of the claimant's age, education, or work
12 experience. Id. The step-two inquiry is de minimis screening
13 device to dispose of groundless claims. Bowen v. Yuckert, 482
14 U.S. 153-54 (1987). The Secretary is required to "consider the
15 combined effect of all of the individual's impairments without
16 regard to whether any such impairment, if considered separately,
17 would be of [sufficient medical] severity." 42 U.S.C. §
18 1382c(a)(3)(F).

19     Basic work activities include the abilities and aptitudes
20 necessary to do most jobs, such as physical functions of walking,
21 standing, sitting, lifting, pushing, pulling, reaching, carrying,
22 or handling; capacities for seeing, hearing, and speaking;
23 understanding, carrying out, and remembering simple instructions;
24 use of judgment; responding appropriately to supervision, co-
25 workers and usual work situations; and dealing with changes in a
26 routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

27     An impairment or combination thereof is not severe when
28 medical evidence establishes only a slight abnormality or a

combination of slight abnormalities which would have no more than
a minimal effect on an individual's ability to work. An
impairment is not severe if it does not significantly limit a
claimant's physical or mental ability to do basic work
activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); Soc. Sec.
Ruling 85-28; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289-90 (9th Cir.
1996).

The ALJ expressly concluded that Plaintiff's depression,
liver pain, and gallbladder problems were slight impairments
which had only minimal, if any, effect on Plaintiff's ability to
work. (A.R. 16-17.) With respect to depression, he stated in
pertinent part:

> In February 2005 the record noted that the claimant
> alleged depression and was prescribed an anti-
> depressant by her regular doctor (Exhibit 8F, p. 10).
> Since that time the record indicates that the claimant
> has not received any counseling or treatment from a
> psychiatrist or psychologist for her alleged
> depression.
> Therefore, the Administrative Law Judge has concluded that
> the claimant's depression... [has] not significantly
> limited her from performing basic work activities and
> has considered these to be non-severe impairments under
> the provisions of 20 C.F.R. 404.1521 and 416.21.

Although it is the claimant's burden to prove disability, it
is also established that an impairment or combination thereof may
be found not severe only if medical evidence establishes a slight
abnormality that has no more than a minimal effect on an
individual's ability to work. <u>Webb v. Barnhart</u>, 433 F.3d 683,
686-87 (9th Cir. 2005). An ALJ may find that a claimant lacks a
medically severe impairment or combination thereof only when his
conclusion is clearly established by medical evidence. <u>Webb v.
Barnhart</u>, 433 F.3d at 687. If an adjudicator is unable to

determine clearly the effect of an impairment or combination

thereof on the claimant's ability to do basic work activities,

the sequential evaluation should not end with the not severe

evaluation step. Id. at 687 (quoting Soc. Sec. Ruling 85-28). The

ALJ must make a careful and informed evaluation of the findings

and their limiting effects:

> Inherent in a finding of a medically not severe
> impairment or combination of impairments is the
> conclusion that the individual's ability to engage
> in SGA is not seriously affected. Before this
> conclusion can be reached, however, an evaluation of
> the effects of the impairment(s) on the person's
> ability to do basic work activities must be made.
> A determination that an impairment(s) is not severe
> requires a careful evaluation of the medical findings
> which describe the impairment(s) and an informed
> judgment about its (their) limiting effects on the
> individual's physical and mental ability(ies) to
> perform basic work activities; thus, an assessment
> of function is inherent in the medical evaluation
> process itself. At the second step of sequential
> evaluation, then, medical evidence alone is evaluated
> in order to assess the effects of the impairment(s)
> on ability to do basic work activities. If this
> assessment shows the individual to have the physical
> and mental ability(ies) necessary to perform such
> activities, no evaluation of past work (or of age,
> education, work experience) is needed. Rather, it
> is reasonable to conclude, based on the minimal impact
> of the impairment(s), that the individual is
> capable of engaging in SGA.

(Soc. Sec. Ruling 85-28 p. 3.) The ruling continues in pertinent

part:

> Great care should be exercised in applying the not
> severe impairment concept. If an adjudicator is unable
> to determine clearly the effect of an impairment or
> combination of impairments on the individual's ability
> to do basic work activities, the sequential evaluation
> process should not end with the not severe evaluation
> step. Rather, it should be continued. In such a
> circumstance, if the impairment does not meet or equal
> the severity level of the relevant medical listing,
> sequential evaluation requires that the adjudicator
> evaluate the individual's ability to do past work,
> or to do other work based on the consideration of age,
> education, and prior work experience.

1  Soc. Sec. Ruling 85-28 p. 4.

2      Although Social Security Rulings do not have the same force

3  and effect as the statute or regulations, they are binding on all

4  components of the Social Security Administration and are to be

5  relied upon as precedents in adjudicating cases; an ALJ's

6  reasoning must comport with the agency's regulations and rulings.

7  Orn v. Astrue, 495 F.3d 625, 635-40 (9th Cir. 2007) (finding

8  inadequate an ALJ's reasoning for rejecting a claimant's

9  credibility that did not comply with regulations and Social

10 Security Rulings).

11     Here, the ALJ noted Plaintiff's treating physician's

12 diagnosis of depression and prescription of medication (Effexor)

13 in February 2005. (A.R. 17, 206.) Plaintiff points out other

14 locations in the record where the diagnosis and prescription were

15 made. (A.R. 200, 204-06. [April 13, 2005, when Plaintiff was

16 "depressed looking" and June 9 and April 23, 2005, when Plaintiff

17 visited Adventist Health stating that she needed a refill of her

18 Effexor prescription.) However, the record supports the reasoning

19 of the ALJ; Plaintiff does not point to any evidence

20 contradicting the ALJ's summary of the state of the medical

21 record, which was that Plaintiff took medication for depression

22 but did not receive any counseling or treatment from a

23 psychiatrist or psychologist for it. Plaintiff did not meet her

24 burden of demonstrating that she suffered any functional

25 limitations from her depression.

26     Plaintiff argues that in finding Plaintiff's depression not

27 severe, the ALJ relied on the opinion of a non-examining state

28 agency physician who concluded that Plaintiff had no medically

18

1  determinable impairment. (Brief p. 4, A.R. 18.) However, the
2  discussion on page 18 of the administrative record, the ALJ's
3  decision, relates not to the earlier stage of analysis concerning
4  the severity of Plaintiff's impairments, but rather Plaintiff's
5  RFC, and specifically, Plaintiff's chronic low back pain; there
6  was mention of a state agency physician's determination that
7  Plaintiff had no medically determinable mental impairment, and
8  the ALJ found the opinions as to RFC of the state agency
9  consultant and Dr. Sunio, a board-certified internist, to be
10 consistent with the objective medical evidence. (A.R. 18.)

11     Further, the Court rejects Plaintiff's assertion that the
12 ALJ relied on Plaintiff's not having a medically determinable
13 mental impairment at step two; rather, the ALJ expressly
14 concluded at step two that Plaintiff had an impairment of
15 depression, noted her physician's diagnosis and treatment, but
16 concluded that Plaintiff's depression was not severe because it
17 had not significantly limited her from performing basic work
18 activities. (A.R. 17.)

19     This finding is supported by substantial evidence. In
20 addition to the few months of treatment for depression by the
21 treating physician, the record also contained the opinion of Dr.
22 Thompson, Plaintiff's treating physician, regarding a medical
23 assessment of ability to do work-related activities, completed by
24 him in October 2005 (thus after Plaintiff's treatment for
25 depression), and there are no indications of any mental
26 impairment on the form. (A.R. 216-18.) Although most of the form
27 solicited information concerning physical functions, one portion
28 of the form was open-ended and asked the physician to state any

1  other work-related activities which were affected by the
2  impairment, how the activities were affected, and what the
3  medical findings were that supported the assessment. (A.R. 218.)
4  Nevertheless, Dr. Thompson noted no mental impairment and
5  assessed no limitations beyond those for diabetic neuropathy, a
6  circulatory condition, swollen legs, and osteoarthritis.

7       Contrary to Plaintiff's argument, there was no duty to
8  develop the record. The law imposes a duty on the ALJ to develop
9  the record in some circumstances. 20 C.F.R. §§ 404.1512(d)-(f),
10  416.912(d)-(f) (recognizing a duty on the agency to develop a
11  medical history, recontact medical sources, and arrange a
12  consultative examination if the evidence received is inadequate
13  for a determination of disability); Brown v. Heckler, 713 F.2d
14  441, 443 (9th Cir. 1983) (recognizing the ALJ's duty fully and
15  fairly to develop the record even if the claimant is represented
16  by counsel). The duty arises when the record before the ALJ is
17  ambiguous or inadequate to allow for proper evaluation of the
18  evidence. Mayes v. Massanari, 262 F.3d 963, 968 (9th Cir. 2001).
19  There is no indication in the present case that the record was
20  ambiguous or inadequate to allow for proper evaluation of the
21  evidence. Thus, the record does not demonstrate that the ALJ was
22  required to develop the record concerning Plaintiff's mental
23  impairment.

24       Plaintiff argues that the ALJ erred in not including her
25  hypertension and obesity in considering Plaintiff's RFC.

26       In determining whether an individual's impairments are of
27  sufficient medical severity that they could be the basis of
28  eligibility for benefits, the Commissioner shall consider the

combined effect of all the individual's impairments without
regard to whether any such impairment, if considered separately,
would be of such severity. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§
404.1545(e), 416.945(3); Soc. Sec. Ruling 96-8p. The ALJ is
responsible for determining the effect of an impairment upon the
other impairments and its effect on the claimant's ability to
work and general health. Celaya v. Halter, 332 F.3d 1177, 1182
(9th Cir. 2003). An ALJ must adequately explain his evaluation of
the combined effects of impairments. Marcia v. Sullivan, 900 F.2d
172, 176 (9th Cir. 1990) (holding that a finding that the claimant
had failed to provide evidence of medically determinable
impairments that met or equaled the listings or duration
requirements of the Act was not sufficient adequately to explain
the evaluation of alternative tests and the combined effects of
the impairments).

Plaintiff has the burden to produce sufficient evidence that
he or she actually suffers from an impairment, or else it need
not be factored in to a disability analysis. Macri v. Chater, 93
F.3d 540, 544 (9th Cir. 1996). Where the evidence is not
sufficient to suggest that a claimant suffered multiple
impairments, or a combination thereof, then it is not error to
fail to do a multiple impairment analysis. Macri v. Chater, 93
F.3d 540, 545 (9th Cir. 1996) (where the evidence did not
establish that medication for a claimed impairment was prescribed
during the claimant's period of disability insurance covered
status).

As to a combination of impairments, the Ninth Circuit Court
of Appeals has cautioned that despite its holding in Celaya v.

1  Barnhart, 332 F.3d 1177, 1181 (9th Cir. 2003), it remains the

2  burden of a claimant to furnish evidence that her impairments, in

3  combination, caused functional limitations. Burch v. Barnhart,

4  400 F.3d 676, 681-83 (9th Cir. 2005).

5       Here, Plaintiff did not list obesity or hypertension as

6  impairments on her applications. (A.R. 78-90.) The ALJ noted that

7  Plaintiff was obese, weighing 224 pounds at sixty inches tall,

8  which appeared to be a contributing factor to her uncontrolled

9  diabetes, low back, right hip, and foot pain. (A.R. 18.) The ALJ

10 cited to medical records consisting of progress notes of treating

11 physician and physician's assistant at Adventist Health for

12 diabetes, hypertension, swelling, stress, and obesity in 2004.

13 (A.R. 18, 200, 203-08.) The ALJ proceeded to analyze the medical

14 records concerning Plaintiff's other impairments (liver and

15 abdominal pain resulting in gallbladder removal but no acute

16 disease thereafter, A.R. 17; depression, A.R. 17; diabetes, A.R.

17 17-18; and back, right upper quadrant, and right hip pain, A.R.

18 18-19.) The ALJ expressly concluded that Plaintiff was not

19 disabled.

20      This case is unlike Celaya v. Halter, 332 F.3d 1177 (9th Cir.

21 2003). Here, Plaintiff was represented by counsel. Plaintiff's

22 obesity was identified by the ALJ as a condition that contributed

23 to Plaintiff's diabetes and pain in the low back, right hip, and

24 foot; these other conditions were expressly analyzed with

25 reference to the pertinent medical records.

26      Plaintiff has not pointed to any evidence indicating that

27 Plaintiff's obesity, alone or in combination with her other

28 impairments, significantly limited her ability to do basic work

activities. Thus, it has not been shown to be a severe
impairment. Soc. Sec. Ruling 02-01p (2002). The RFC of treating
physician Dr. Thompson, who had previously noted and diagnosed
Plaintiff's obesity, was that Plaintiff had lifting and carrying
limitations (ten pounds occasionally, five pounds frequently)
because of reduced sensory involvement of her lower extremities
due to diabetic neruopathy; standing/walking limitations (five
hours per work day, and one hour without interruption) because of
the same conditions, and elevated pain; sitting limitations (six
hours total and two without interruption) because of swelling of
legs, reduced circulation/diabetes; limitations on crouching,
crawling, and climbing because of diabetic neuropathy, pack pain,
and osteoarthritis shown on an x-ray; and limitations on feeling,
pushing, pulling, and seeing because of diabetic complications
affecting her sight and sensory based on diabetic readings four
times higher than normal and sensory exam; and environmental
limitations (unspecified restrictions with respect to heights,
moving machinery, and temperature extremes) due to peripheral
circulation due to diabetes and neuropathy based on blood sugars,
alc, and physical findings. (A.R. 216-18.) Internist Dr. Sunio
noted her history of obesity and further diagnosed her obesity
and hypertension (A.R. 126, 128); after a comprehensive internal
medicine evaluation on January 10, 2004, he opined, however, that
Plaintiff could stand and walk six hours because of pain in her
lower back associated with prolonged standing or walking; six for
four to six hours due to pain in the lower back upon prolonged
sitting; lift and carry twenty pounds frequently and fifty pounds
occasionally due to pain in her lower back aggravated upon heavy

23

1   lifting; with no postural, manipulative, visual, communicative,
2   or environmental limitations. (A.R. 128-29.)

3       Further, obesity is not a separately listed impairment, and
4   Plaintiff has not shown how in combination with any other
5   evidence it would meet the requirements of a listing. Soc. Sec.
6   Ruling 02-01p. Further, Plaintiff has not even suggested what
7   listing would be met. An ALJ is not required to discuss the
8   combined effects of a claimant's impairments or compare them to
9   any listing in an equivalency determination unless the claimant
10  presents evidence in an effort to establish equivalence. Burch v.
11  Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

12      Accordingly, it is concluded that the ALJ did not err in his
13  analysis of Plaintiff's hypertension or obesity, which was noted
14  and which was the subject of medical evidence in the record;
15  Plaintiff failed to meet her burden of establishing that any
16  functional limitations resulted from these impairments in
17  combination with Plaintiff's other impairments.

18      VI. Treating and Examining Physicians's Opinions

19      Plaintiff argues that the ALJ improperly rejected the
20  opinion of the treating physician, Dr. Michael Thompson.

21          The opinions of treating doctors should be given
22      more weight than the opinions of doctors who do not
        treat the claimant. Lester [v. Chater, 81 F.3d 821, 830
        (9th Cir.1995) (as amended).] Where the treating
23      doctor's opinion is not contradicted by another doctor,
        it may be rejected only for "clear and convincing"
24      reasons supported by substantial evidence in the
        record. Id. (internal quotation marks omitted). Even if
25      the treating doctor's opinion is contradicted by
        another doctor, the ALJ may not reject this opinion
26      without providing "specific and legitimate reasons"
        supported by substantial evidence in the record. Id. at
27      830, quoting Murray v. Heckler, 722 F.2d 499, 502 (9th
        Cir.1983). This can be done by setting out a detailed
28      and thorough summary of the facts and conflicting

                                    24

clinical evidence, stating his interpretation thereof,
and making findings. <u>Magallanes [v. Bowen</u>, 881 F.2d
747, 751 (9th Cir.1989).] The ALJ must do more than
offer his conclusions. He must set forth his own
interpretations and explain why they, rather than the
doctors', are correct. <u>Embrey v. Bowen</u>, 849 F.2d 418,
421-22 (9th Cir.1988).
<u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir.1998);
accord <u>Thomas</u>, 278 F.3d at 957; <u>Lester</u>, 81 F.3d at
830-31.

<u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007).

Here, the ALJ noted Dr. Thompson's medical assessment, which

has been previously summarized; the ALJ stated that the ALJ was

giving less weight to the opinion because it was not consistent

with his own treating records and appeared to rely more on the

claimant's subjective complaints. (A.R. 18.)

The opinion of a treating physician may be rejected if it is

conclusionary in form and not supported by clinical findings.

<u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992);

<u>Magallanes v. Bowen</u>, 881 F.2d 747, 751. This is consistent with

the requirement that a physical or mental impairment must result

from anatomical, physiological, or psychological abnormalities

which are demonstrable by medically acceptable clinical and

laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3),

1382c(a)(D). The fact that an opinion is based primarily on the

patient's subjective complaints may be properly considered.

<u>Matney on Behalf of Matney v. Sullivan</u>, 981 F.2d 1016, 1020 (9th

Cir. 1992). Where a treating source's opinion is based largely on

the Plaintiff's own subjective description of his or her

symptoms, and the ALJ has discredited the Plaintiff's claim as to

those subjective symptoms, the ALJ may reject the treating

source's opinion. <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir.

1  1989).

2      Here, substantial evidence supports the ALJ's finding that
3  the doctor's opinion was inconsistent with his own treating
4  records. Dr. Thompson's RFC was based on medical findings of
5  reduced sensory involvement of the lower extremities due to
6  diabetic neuropathy, elevated pain on standing and walking,
7  swelling of the legs, reduced circulation, back pain,
8  osteoarthritis on x-ray (regarding postural limitations only),
9  sensory exam, diabetic complications affecting sight and sensory,
10  and diabetic readings four times higher than normal. (A.R. 216-
11  18.)

12      Review of the progress notes included during the period of
13  time from November 2003 through July 2005 at the Adventist Health
14  facility (A.R. 130-47, 197-215) reveals that although there were
15  some high blood sugar or glucose readings in June and July 2005
16  and January 2004 (A.R. 198, 262, 137), there is a lower entry
17  (145) in October 2004 (A.R. 209); many of the entries are devoid
18  of precise glucose readings.

19      However, with respect to the symptoms mentioned by the
20  doctor other than extremely high blood sugar readings, such as
21  reduced sensory involvement of the lower extremities, elevated
22  pain on standing and walking, reduced circulation, and diabetic
23  complications affecting sight and sensory, there are no entries
24  whatsoever. No retinopathy, and clear lenses and cornea were
25  noted on December 17, 2003. (A.R. 142-43.) Many entries were
26  devoid of any indication of complaints of pain. (A.R. 144, 143,
27  139, 137, 135, 214, 208, 207, 206, 204.) Plaintiff complained of
28  pain in the back in December 2003, pain in the right hips and

buttocks and sciatica in February 2004, chest pain once in
October 2004, foot pain in June 2005 and foot pain and hurting
all over in April 2005, and leg pain in July 2005. (A.R. 209,
132, 205, 262, 198, 144.) Occasionally discomfort on examination
was noted (tenderness in the right upper quadrant in January 2004
(A.R. 139), right lower abdomen in January 2004 (A.R. 133), and
tender abdomen July 2004 (A.R. 214)). In June 2004 it was noted
that Plaintiff had pain following gallbladder surgery as well as
back pain. (A.R. 215.)  There was only one entry of edema (A.R.
207), with no other entries of edema and one expressly negative
("no edema") entry (AR. 204). It was noted in November 2003 that
Plaintiff was walking and unspecified pain continued. (A.R. 148.)

     In summary, Dr. Thompson's treating notes were inconsistent
with his opinion that Plaintiff was limited and that the various
findings warranted assigning an essentially sedentary capacity to
Plaintiff. Substantial evidence supported the ALJ's reasoning.

     The record also shows a paucity of clinical findings to
support the doctor's RFC, and it further reveals that Plaintiff's
reports of pain and subjective limitations appear to have been
the primary basis of phenomena described in the treatment notes.
As previously discussed, the ALJ properly rejected the
Plaintiff's credibility. Thus, it was permissible for the ALJ to
discount Dr. Thompson's opinion to the considerable extent that
it appeared to rest on Plaintiff's subjective complaints.

     Plaintiff argues that the opinion of examining physician Dr.
Gilbert Sunio (A.R. 125-29) could not constitute substantial
evidence in support of the ALJ's conclusions regarding
Plaintiff's RFC because it was dated January 10, 2004, whereas

1 Dr. Thompson's opinion was rendered in October 2005.

2 It is true that generally a report will be given greater
3 weight to the extent that it is supported by medical evidence, is
4 consistent with the record, and is based on complete data. 20
5 C.F.R. §§ 404.1527(d), 416.927(d) However, there is no black and
6 white time limit with respect to the currency of reports.

7 Here, the ALJ noted Dr. Sunio's findings of minimal
8 tenderness in the upper right quadrant and tenderness in the
9 lower spine area but otherwise essentially normal findings on
10 examination; Dr. Sunio's diagnosis of right upper quadrant
11 abdominal pain, etiology still unknown, chronic low back pain,
12 probably degenerative joint disease, diabetes mellitus, obesity,
13 and hypertension uncontrolled without medication; and his RFC of
14 occasionally lifting and carrying fifty pounds, frequently
15 lifting and carrying twenty pounds, standing and walking six
16 hours, and sitting four to six hours in a work day. (A.R. 18.)
17 The ALJ also noted the similar RFC of the state agency medical
18 consultants. (A.R. 18, 175-84, 193-95.) The ALJ then expressly
19 stated that the ALJ found that the opinions of the state agency
20 medical consultants and those of Dr. Sunio were consistent with
21 the objective medical evidence and entitled to significant
22 weight. (A.R. 18.)

23 Dr. Sunio's consultative examination revealed independent
24 clinical findings on examination, namely, essentially normal
25 findings except for some tenderness in the lower lumbar spine,
26 but with normal strength, muscle bulk, and tone in all
27 extremities; no sensory deficits; and normal reflexes. He based
28 his diagnoses and his functional assessment on these findings.

1 Thus, his opinion constitutes substantial evidence upon which the
2 ALJ correctly predicated his decision. The medical opinion of a
3 nontreating doctor may be relied upon instead of that of a
4 treating physician if the ALJ provides specific and legitimate
5 reasons supported by substantial evidence in the record. <u>Holohan</u>
6 <u>v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing <u>Lester</u>
7 <u>v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)). An examining
8 physician's opinion is substantial evidence sufficient to support
9 disregarding a treating physician's opinion where the examining
10 physician provides independent clinical findings that differ from
11 the findings of the treating physician. <u>Orn v. Astrue</u>, 495 F.3d
12 625, 632 (9th Cir. 2007). Independent clinical findings can be
13 either 1) diagnoses that differ from those offered by another
14 physician and that are supported by substantial evidence, or 2)
15 findings based on objective medical tests that the treating
16 physician has not himself or herself considered. <u>Orn v. Astrue</u>,
17 495 F.3d at 632.

18    Accordingly, the Court rejects Plaintiff's challenges to the
19 ALJ's giving less weight to the treating physician's opinion and
20 greater weight to the examining physician's opinion.

21    VII. <u>Recommendation</u>

22    Therefore, the Court finds that the ALJ's decision was
23 reached in accordance with appropriate legal standards and was
24 supported by a statement of legally sufficient reasons that in
25 turn were supported by substantial evidence in the record.

26    Accordingly, it IS RECOMMENDED that

27    1. Plaintiff's social security complaint BE DENIED; and

28    2. Judgment for Defendant Michael J. Astrue, Commissioner of

Social Security, and against Plaintiff Marylou Garcia, BE ENTERED.

    This report and recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    November 28, 2007            /s/ Sandra M. Snyder**
                                     UNITED STATES MAGISTRATE JUDGE